## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| QUICKSILVER RESOURCES INC., *et al.*,[1] | Case No. 15-10585 (LSS) |
| | Jointly Administered |

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the Debtors' estates, | Adv. Pro. No. 15-51896 (LSS) |
|      Plaintiff, | |
|      vs. | |
| THE BANK OF NEW YORK MELLON TRUST COMPANY N.A., as indenture trustee under that certain Indenture dated June 21, 2013 and as Second Lien Agent under that certain Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement dated June 21, 2013; CREDIT SUISSE AG, as administrative agent under that certain Second Lien Credit Agreement dated June 21, 2013; and LINDA DAUGHERTY, as trustee under that certain Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement dated June 21, 2013; and JOHN DOES 1 – 1,000, | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. ("Quicksilver") [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

## OPINION[2]

The Court is asked to determine whether Quicksilver Resources, Inc. ("Quicksilver")
granted the Second Lien Parties[3] a lien on some 510 real property interests and, if so, whether the
estate may avoid the liens pursuant to section 544 of the United States Bankruptcy Code (the
"Bankruptcy Code"). Upon review of the record and consideration of the argument of counsel,
the Court concludes that the Second Lien Parties have liens on all of Quicksilver's real property
interests located in Texas, and that such liens are perfected in the seven counties in which
Mortgages are recorded. As such, it is unnecessary for the Court to reach the section 544 issue.

**Procedural Posture**

On March 17, 2015, Quicksilver and certain of its direct and indirect subsidiaries
(collectively, the "Debtors") each filed a voluntary case under chapter 11 of the Bankruptcy
Code. The Debtors' cases have been jointly consolidated for procedural purposes only and are
being jointly administered. The Debtors continue in the management and operation of their
respective businesses and properties as debtors in possession pursuant to sections 1107 and 1108
of the Bankruptcy Code.

On March 25, 2015, the United States Trustee for Region 3 appointed an Official
Committee of Unsecured Creditors (the "Committee"). As part of its duties, the Committee
investigated the liens and securities interests asserted by prepetition secured parties. On October
5, 2015, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for
Leave, Standing and Authority to Prosecute Claims on Behalf of the Debtors' Estates and for*

---

[2] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of
Bankruptcy Procedure 7052.
[3] The Second Lien Parties are: Defendant Credit Suisse AG, Cayman Islands Branch (f/k/a Credit Suisse AG),
as administrative agent for the Second Lien Lenders, Defendant The Bank of New York Mellon Trust
Company N.A., as Second Lien Indenture Trustee and second lien collateral agent under that certain Indenture
dated as of June 21, 2013, and the Ad Hoc Group of Second Lienholders as listed in that Second Supplemental
Statement Pursuant to Bankruptcy Rule 2019 filed on October 1, 2015 [Case No. 15-10585; D.I. 667].

*Related Relief* [4] (the "Standing Motion").  By the Standing Motion, the Committee sought leave

to prosecute certain causes of action regarding the extent, validity and priority of certain second

liens and security interests granted prepetition by Quicksilver to the Second Lien Collateral

Agent (defined below).  On November 9, 2015, the Court entered the *Order Granting in Part*

*and Denying in Part Motion of the Official Committee of Unsecured Creditors for Leave,*

*Standing and Authority to Prosecute Claims on Behalf of the Debtors' Estates and for Related*

*Relief,*[5] which permitted the filing of a complaint.  That same day, the Committee initiated this

adversary proceeding by filing its nineteen count *Complaint for Declaratory Judgment and for*

*Related Relief and Objection to Claims*[6] (the "Complaint") against the Second Lien Parties

(defined below).  By the Complaint, the Committee seeks separate declaratory judgments

regarding various categories of collateral, avoidance of unperfected liens and security interests,

and relief under sections 506(c) and 552(b)(1) of the Bankruptcy Code.  The Complaint also

includes multiple objections to the allowance of the Second Lien Parties' claims.

Because of the sale process being pursued by the Debtors, and the auction currently

scheduled for January 20, 2015, the Committee and the Second Lien Parties agreed that the three

counts of the Complaint seeking declarations with respect to Quicksilver's hydrocarbon interests

would be litigated on an expedited basis to facilitate a possible credit bid by the Second Lien

Parties. The parties, therefore, entered into an expedited discovery and hearing schedule[7] with

respect to counts XII, XIII, and XIV of the Complaint, by which the Committee seeks: (i) a

declaratory judgment that the certain of Quicksilver's hydrocarbon interests are not subject to the

Second Lien Parties' liens and security interests (Count XII); (ii) a declaratory judgment that,

---

[4] Case No. 15-10585, D.I. 676
[5] Case No. 15-10585, D.I. 831 ("Standing Order")
[6] Adv. Pro. No. 15-51896, D.I. 1
[7] *See* Standing Order, Sch. A

3

even if certain of Quicksilver's hydrocarbon interests are subject to the Second Lien Parties'

liens and security interests, such liens and security interests are not perfected (Count XIII); and

(iii) to avoid and recover for the Debtors' estates unperfected liens and security interests pursuant

to Bankruptcy Code section 544 as it relates to Quicksilver's hydrocarbon interests.

(Count XIV).[8]

A three day evidentiary trial was scheduled for December 14-16, 2015.  As a result of the

discovery and negotiations between the Committee and the Second Lien Parties, however, the

factual issues were narrowed considerably, and the three-day trial turned into a one hour legal

argument on agreed facts and documents, and simultaneous written submissions.[9]  At the

conclusion of the argument, the Court took the matter under advisement.

**Background**

By way of background, and to frame the issues, the Court takes the following information

from the Declaration of Vanessa Gomez LaGatta In Support of First Day Pleadings.[10]  None of

these statements are controversial nor do they impact the decision in this case.

Quicksilver is an independent oil and gas company engaged in the acquisition,

exploration, development, and production of onshore and natural gas in North America and is

based in Fort Worth, Texas.  Quicksilver's oil and natural gas properties are primarily located in

Texas and in the Canadian provinces of Columbia and Alberta.  Quicksilver's four development

and exploration areas include: (i) the Barnett Shale in the Fort Worth Basin in north-central

Texas; (ii) the Delaware basin in western Texas; (iii) the Horn River Basin in British Columbia,

---

[8] The remaining counts of the Complaint, and Count XIV as it relates to the remaining counts, have been held in abeyance to proceed on a schedule to be agreed to by the parties and the Court.

[9] *Brief of the Official Committee of Unsecured Creditors with Respect to Counts XIII and XIV of the Complaint* ("Committee Brief") [Adv. Pro. No. 15-51896, D.I. 38]; *Pre-Trial Brief of the Second Lien Parties* ("Second Lien Brief") [Adv. Pro. No. 15-51896, D.I. 39]

[10] Case No. 15-10585 D.I. 19

Canada; and (iv) the coalbeds of the Horseshoe Canyon in Alberta, Canada. The Barnett Shale is one of the Debtors' core production and development areas. As of December 31, 2014, the Debtors had a total of 980 (587.7 net) producing wells in the Barnett Shale. The Debtors' west Texas assets are an oil and gas exploration opportunity. The Debtors did not recognize a material amount of proved reserves from their west Texas assets in 2014. The Canadian assets are held by non-debtor Canadian entities.

**Stipulated Statement of Facts**[11]

On December 7 and 10, 2015 respectively, the Parties entered into two stipulations: the *Stipulation and Agreement by and among the Official Committee of Unsecured Creditors, the Second Lien Parties and the Debtors*[12] (the "Real Property Stipulation") and the *Joint Pre-Trial Stipulation*[13] (together the "Stipulations").

In the Pre-Trial Stipulation, the parties agree that the following facts are admitted and require no proof:

Quicksilver's approximately 7500 real property interests fall into one of three categories: (i) Unencumbered Real Property Interests; (ii) Encumbered Real Property Interests; and (iii) Disputed Real Property Interests. The Unencumbered Real Property Interests are: (i) the Quicksilve's real property interests located in western Texas; and (ii) 1,342 real property interest consisting of: (a) 889 oil and gas leases not listed on any "Exhibit A" to the applicable Mortgages; (b) 450 real property interests owned by debtor Cowtown Pipeline L.P. ("CPLP") such as easements, rights of ways, permits and licenses related primarily to water and gas lift pipeline, roads, and railroads ("TXPLs"); (c) two deeded properties owned by CPLP, and (d) one surface interest owned by CPLP. The Disputed Real Property Interests are 510 real property

---

[11] Terms not defined herein have the meaning ascribed to them in the Mortgages.
[12] Adv. Pro. No. 15-51896, D.I. 27-1
[13] Adv. Pro. No. 15-51896, D.I. 33

interests consisting of 413 TXPLs, 39 surface interests, and 58 deeded properties.  The

Encumbered Real Property Interests are Quicksilver's property interests located within the state

of Texas that are not included within the definition of either Unencumbered Real Property

Interests or Disputed Real Property Interests.

On June 21, 2013, the Debtors entered into that certain Second Lien Credit Agreement

dated as of June 21, 2013 (the "Second Lien Credit Agreement") among Quicksilver, as

borrower; the Second Lien Administrative Agent; JPMorgan Chase Bank, N.A., as syndication

agent; Bank of America, N.A., Citigroup Global Markets Inc., Deusche Bank Securities Inc. and

Wells Fargo Bank, National Association, as co-documentation agents; and the lenders party

thereto, which made available to Quicksilver a $625 million second lien term loan.  Defendant

Credit Suisse AG is the administrative agent (the "Second Lien Administrative Agent") under the

Second Lien Credit Agreement.  Defendant The Bank of New York Mellon Trust Company, N.A.

("BNYM"), is the trustee (the "Second Lien Indenture Trustee") under the Second Lien Credit

Agreement.

On the same day, Quicksilver also issued that certain second lien senior secured floating

rate notes due 2019 indenture (the "Second Lien Indenture") dated as of June 21, 2013 with

Quicksilver as issuer, Cowtown Pipeline Funding, Inc., Cowtown Pipeline Management, Inc.,

Cowtown Pipeline L.P., Cowtown Gas Processing L.P., QPP Parent LLC, QPP Holdings LLC,

Barnett Shale Operating LLC, Silver Stream Pipeline Company LLC as guarantors and BNYM

as trustee and second lien collateral agent.

Also on June 21, 2013, Quicksilver entered into that certain Mortgage, Deed of Trust,

Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing

Statement (collectively, as filed or recorded in the appropriate office of recorder of deeds for the

applicable jurisdiction in which the subject real property is located, the "Mortgages") from Quicksilver as mortgagor to BNYM, as second lien agent, or alternatively, to Linda Daugherty, as trustee for the benefit of BNYM, as second lien agent, for itself and for the ratable benefit of the other secured parties dated as of June 21, 2013, as amended or modified.  Defendant Linda Daugherty is the trustee under the Mortgages (in such capacity, the "Mortgages Trustee").

The Mortgages are identical except with respect to the "Exhibit A" accompanying each mortgage.  The Exhibit A accompanying each of the Mortgages describes certain property interests in the corresponding county.  Of particular importance to the instant dispute are the following two stipulations:  (i) The Mortgages were properly filed, each with its respective Exhibit A, in Denton County, Hill County, Hood County, Johnson County, Parker County, Somervell County, and Tarrant County, Texas and (ii) none of the Disputed Real Property Interests are expressly listed on any Exhibit A to any of the applicable Mortgages.

In addition to the Stipulations, the parties tendered to the Court an agreed set of exhibits.  The agreed exhibits are:  (i) the Second Lien Credit Agreement, (ii) the Mortgages for Hood County, Johnson County, Parker County, Hill County, Denton County, Somervell County and Tarrant County, Texas; (iii) the Second Lien Indenture; and (iv) the Real Estate Stipulation.

**Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in the Court pursuant to 29 U.S.C. §§ 1408 and 1409.  Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157 (b)(2)(A), (K) and (O).

**Standard of Review**

There is a split in case law regarding which party bears the burden of proof in an action to

avoid a lien under section 544(a).  Certain courts have required the moving party to prove facts

showing that a hypothetical creditor or purchaser could avoid the liens.[14]  Other courts have

required the defendant to show that its lien was valid and perfected.[15]  The parties here have

stipulated to all facts and the issue before the Court is purely a question of law.  As a result, the

Court need not reach a determination as to which party bears the burden of proof.

**The Parties' Positions**

The questions before the Court are whether the granting language in the Mortgages

convey to the Second Lien Parties liens and security interests on the Disputed Real Property

Interests and, if so, whether such liens and security interests are perfected.

The Committee argues that Section 2.01 of the Mortgages grant liens only on the Oil and

Gas Properties that are specifically listed on each Exhibit A to the accompanying Mortgages.[16]

Because the Disputed Real Property Interests are not included on an Exhibit A, the Committee

concludes that Section 2.01 does not grant a lien on those interests.  The Committee alternatively

argues that if the Mortgages, by their terms, do grant liens on the Disputed Real Property

---

[14] *Citizens State Bank of Nev., Mo. v. Davison (In re Davison)*, 738 F.2d 931, 936 (8th Cir. 1984) (stating "the general rule that a trustee in bankruptcy seeking to avoid a purported security interest bears the burden of proving the imperfection or invalidity of that interest"); *Jones v. Money Store, Inc. (In re Jones)*, 284 B.R. 92, 97 (Bankr. E.D. Pa. 2002) (the debtor, as the party moving under section 544(a), has the burden of proving the invalidity of a mortgage); *Munoz v. Nutter (In re Munoz)*, 2011 WL 710501, at *13 (Bankr. W.D. Tex. Feb. 22, 2011) ("It is well established that the Debtors, as Plaintiffs, bear the burden of proof under the 'strong arm power' of § 544(a).")

[15] *In re BRI Corp.*, 88 B.R. 71 (Bankr. E.D. Pa. 1988) (if creditor did not meet its burden of proving that it fell within an exception to a consignment statute, the trustee could avoid its priority status under section 544(a)(1)); *Massey v. Germantown Savs. Bank (In re Duffy-Irvine Associates)*, 39 B.R. 525, 527 (Bankr. E.D. Pa. 1984) (holder of alleged valid mortgage lien against certain property failed to meet her burden of proving actual or constructive notice to trustee in bankruptcy of her claim, and thus her lien could be avoided by trustee); *Collins v. Angell (In re Baker)*, 511 B.R. 41, 48 (Bankr. N.D.N.Y. 2014) (creditor asserting a perfected security interest on petition date in Chapter 7 debtor's dairy cows, of kind sufficient to defeat trustee's strong-arm rights as hypothetical lien creditor, bore burden of proving perfection as against third party under state law and to defeat trustee's strong-arm claims)

[16] Committee Brief ¶ 26

8

Interests, the Mortgages do not satisfy the Texas statute of frauds because the Disputed Real Property Interests are not listed on any Exhibit A.[17] The Committee concludes that these liens are not valid under Texas law and, as a result, are subject to avoidance.

The Second Lien Parties argue that subsections (a) and (e) in Section 2.01 both grant a lien on the Disputed Real Property Interests.[18] As its main argument, the Second Lien Parties assert that subsection (e) constitutes a blanket lien over all of Quicksilver's real property interests in the State of Texas."[19] They rely on Texas law that recognizes blanket liens following specific grants, and contend that the phrase in subsection (e), "all other rights, titles, interests and estates and every part and parcel thereof," creates a valid, enforceable, blanket lien.[20] Alternatively, the Second Lien Parties argue that subsection (a) specifically grants a lien over all of the easements, rights-of-way, surface rights, deeds, and other appurtenances related in any way to the Oil and Gas Properties on Exhibit A to each of the Mortgages. The Second Lien Parties argue that to the extent the Mortgages grant a blanket lien on all of the Disputed Real Property Interests, the statutes of frauds is satisfied. The Second Lien Parties concede, however, that if the liens on the Disputed Real Property Interests are limited to those particular surface interests that are appurtenant to the leases described on each Exhibit A, then the Second Lien Parties do not hold a perfected lien on Disputed Real Property Interests that relate to leases identified as Unencumbered Real Property Interests.

---

[17] Committee Brief ¶¶ 29-31
[18] Second Lien Brief ¶¶ 17-23
[19] Second Lien Brief ¶ 13
[20] Second Lien Brief ¶ 14

**Discussion**

**A.     Whether the Mortgages Grant Liens in the Disputed Real Property Interests?**

Texas law governs the interpretation of the Mortgages,[21] and this is the law that both

parties have presented to the Court.  The United States Bankruptcy Court for the Northern

District of Texas has succinctly set forth the principles for determining the estate conveyed by a

mortgage governed by Texas law:

> The primary duty of the court in interpreting what estate a deed conveys is to
> ascertain the intent of the parties as expressed in the instrument itself.  In
> ascertaining the intent, the court must attempt to harmonize all parts of a deed
> because the parties to an instrument intend every clause to have some effect.  The
> inquiry to construe the legal effect of a grant or reservation in a deed is not to be
> determined alone from a single word, clause, or part, but from every word, clause,
> and part that is pertinent.[22]

To apply this case law, the Court starts with the granting language of the Mortgages.  Consistent

with the requirement to consider all relevant parts of a deed, it helps to have a general

understanding of the structure of the granting clause.

The introductory clause of Section 2.01 of the Mortgages, entitled "Grant of Liens,"

generally provides that to secure payments of its obligations to the Second Lien Parties,

Quicksilver is granting a lien on all of its properties rights and interests listed in clauses (a)

---

[21] Mortgages, Section 7.10.
> Governing Law. Insofar as permitted by otherwise applicable law, this Mortgage shall be
> construed under and governed by the laws of the State of New York; provided however, that,
> with respect to any portion of the Mortgaged Property located outside of the State of New
> York, the laws of the place in which such property is located in, or offshore area adjacent to
> (and State law made applicable as a matter of federal law), shall apply to the extent of
> procedural and substantive matters relating only to the creation, perfection, foreclosure of
> Liens and enforcement of rights and remedies against the Mortgaged Property.

[22] *Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., N.A. (In re Cornerstone E & P Co.)*, 435 B.R.
390, 402-03 (Bankr. N. D. Tex. 2010) ("*Cornerstone I* ") (internal citations omitted); *see also Gray & Co.
Realtors, Inc. v. Atlantic Hous. Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App. 2007) ("[I]f possible, the court
must construe the language of the deed so as to give effect to all provisions thereof and will harmonize all
provisions therein, and not strike down any part of the deed, unless there is an irreconcilable conflict wherein
one part of the instrument destroys in effect another part thereof."); *McLane Foodservice, Inc. v. Table Rock
Rests, L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013) ("Under Texas law, words not defined in a contract are to be
given their 'plain and ordinary meaning.'")

through (e) located in the State of Texas or the Outer Continental Shelf. Subsections (a) through

(e) provide, in relevant part, the following categories of interests:

(a) All rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to the Oil and Gas Properties described on Exhibit A

(b) All rights, titles, interests, and estates now owned or hereafter acquired by the Mortgagor in and to all geological, geophysical, engineering, accounting, title, legal and other technical or business data concerning the Oil and Gas Properties and all books, files, records, magnetic media, computer records and other forms of recording or obtaining access to such data.

(c) All rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to all Hydrocarbons relating to the Oil and Gas Properties.

(d) Any property that may from time to time hereafter, by delivery or by writing of any kind, be subjected to the Liens hereof by the Mortgagor or by anyone on the Mortgagor's behalf; and the Trustee and/or the Mortgagee are hereby authorized to receive the same at any time as additional security hereunder.

(e) All of the rights, titles, interests of every nature whatsoever now owned or hereafter acquired by the Mortgagor in and to the Oil and Gas Properties described in Exhibit A and all other rights, titles, interest and estates, and every part and parcel thereof.[23]

On a high level read, by Section 2.01, Quicksilver grants liens in five categories of

interests, some of which are overlapping, and only some of which are proscribed by the

descriptions on Exhibit A. In subsection (a), Quicksilver grants liens on all Oil and Gas

Properties described on Exhibit A. In subsections (b) through (d), Quicksilver grants liens on

data, books and records concerning the Oil and Gas Properties, all rights titles and interests in all

Hydrocarbons relating to Oil and Gas Properties, and all property that may be subjected to a Lien

held by Quicksilver. None of the grants in (b) through (d) are restricted to Exhibit A. Finally,

subsection (e) grants liens on two categories of property. Like subsection (a), the first category

grants liens on the Oil and Gas Properties described in Exhibit A. The second category grants

---

[23] Mortgages, Section 2.01(a-(e)

11

liens on "all other rights, titles, interests and estates, and every part and parcel thereof." This

second category is not limited to the real estate interests listed on Exhibit A.

### i. Subsection (e) Grants a Blanket Lien on All Real Property Interests in Texas, Including the Disputed Real Property Interests.

As distilled from the full text, and as relevant to address the parties' arguments regarding

subsection (e), Section 2.01 provides:

> Mortgagor . . . does hereby grant, bargain, sell, assign, mortgage, transfer and convey to the Trustee, for the use and benefit of [the Second Lien Parties], all the properties, rights and interests listed in clauses (a) through (e) below in this Section 2.01, **which are located in** (or cover or relate to Properties located in) **the State of Texas** . . . .

> (e) All of the rights, titles and interests of every nature whatsoever now owned or hereafter acquired by the Mortgagor in and to the Oil and Gas Properties described in Exhibit A **and all other rights, titles, interests and estates and every part and parcel thereof,** including without limitation, any rights, titles, interests and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges or Permitted Liens to which any of such Oil and Gas Properties or other rights, titles, interests or estates are subject or otherwise . . . .[24]

The Second Lien Parties argue that the bolded language above is a blanket lien on all of

Quicksilver's real property interests in the State of Texas. They argue that in order to give

meaning to each word and clause in subpart (e), it must be read as granting not only a lien on the

Oil and Gas Properties described on Exhibit A, but also a general lien on "all other" property

owned by Quicksilver, including the Disputed Real Property Interests. Otherwise, the Second

Lien Parties argue, subsection (e) would be wholly duplicative of subsection (a). The Committee

argues that to so find would be inconsistent with a general read of the Mortgages, and, in

particular with the defined terms. Further, the Committee argues that subsection (e) is a curative

provision meant to pick up defects in any cut off rights on leases on each accompanying

Exhibit A.

---

[24] Mortgages Section 2.01(e)

The Court agrees with the Second Lien Parties.  First, as stated above, the Court finds that a plain reading of subsection (e) reflects that it contains two clauses, divided by the conjunction "and."[25]  The first clause, though worded slightly differently than subsection (a), grants a lien on the interests in all Oil and Gas Properties described on Exhibit A, and could be viewed as duplicative.  The second clause grants a lien on "all other" rights, titles, interests and estates owned by Quicksilver.  The Court is not prepared to read out the words "all other" as the Committee would suggest because it would render the second clause meaningless.

Additionally, this reading is consistent with case law applying Texas law to interpret similar language.  Courts applying the Texas rules of construction to contracts that purport to convey real property interests have determined that the phrase "all the right, title, interest and estate" is blanket language that refers to all of a grantor's property rights.  For instance, in *Cornerstone I*[26] the bankruptcy court applied Texas law in order to determine what real property interest was conveyed through clause (g) in a contract that read, "(g) any and all rights, titles and interests of Mortgagor (which are similar in nature to any of the rights, titles and interests described in (a) through (f) above) . . . ."  The court determined that clause (g) was a blanket grant.[27]

This interpretation is also consistent with case law holding that Texas law will give effect to a general granting clause that broadens a specific granting clause unless there is a conflict or "repugnance" between the specific granting clause and the general granting clause.[28]  If there is a

---

[25] *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 505 (Tex. App. 1989) ("'and' means 'and'")

[26] *Cornerstone I*, 435 B.R. 390 (Bankr. N.D. Tex. 2010)

[27] *Cornerstone I*, 435 B.R. at 403; *see also Katz v. Bakke*, 265 S.W.2d 686, 687 (Tex. App. 1954) (Stating that the following language is a blanket clause:  "it being intended hereby to convey to the Grantee herein all the right, title, interest and estate in and to any and all minerals owned by the undersigned or under said land hereinabove described, except as to those minerals hereinafter specifically excepted from this conveyance.")

[28] *Holloway's Unknown Heirs v. Whatley*, 131 S.W.2d 89 (Tex. 1939); *Sun Oil Co. v. Burns*, 84 S.W.2d 442 (Tex. Comm'n of App. 1935); *Katz v. Bakke*, 265 S.W.2d 686 (Tex. App. 1954); *Garcia v. Garcia*, 2006 WL

repugnance between a specific granting clause and a general granting clause, Texas courts give

effect only to the specific granting clause.[29] As noted by the *Cornerstone I* court:

> it is rare that the conflict between a specific and general grant is so great as that
> the general grant cannot be given literal effect, such as when the general grant is
> repugnant to the rest of the deed. *Greer*, 172 S.W.3d at 615016 (Hecht, J.,
> concurring). 'Even where different parts of the instrument appear to be
> contradictory and inconsistent with each other, the court will, if possible,
> harmonize the parts and construe the instrument in such way that all parts may
> stand and will not strike down any portion unless there is an irreconcilable
> conflict wherein one part of the instrument destroys in effect another part.'
> *Woods*, 273 S.W.2d at 620-21. As such, Texas law recognizes that a general grant
> may enlarge a specific grant with no repugnance when the deed clearly evidences
> the grantor's intent to convey not only the specific property interest described, but
> also other interests 'coming with the terms of the general description.'[30]

Here, the general grant in the second clause in subsection (e) is not inconsistent with or

repugnant to the specific grant in subsection (a) or the first clause in subsection (e).

Subsection (a) grants a lien on oil and gas interests. Subsection (e) grants liens on those same oil

and gas interests, as well as on additional oil and gas interest. Subsection (e), therefore, does not

contradict the specific grant in subsection (a) or the first clause of subsection (e), but, instead,

"enlarges the grant described in the . . . preceding language."[31] As a result, the Court's

interpretation gives effect to Texas rules of contract construction.

The Committee argues that subsection (e) is not a general lien granting provision, but that

it is a curative provision. The Committee relies on the bolded language below:

> (e) All of the rights, titles and interests of every nature whatsoever now owned or
> hereafter acquired by the Mortgagor in and to the Oil and Gas Properties
> described in <u>Exhibit A</u> and all other rights, titles, interests and estates and
> every part and parcel thereof, **including without limitation, any rights,**
> **titles, interests and estates as the same may be enlarged by the discharged**

---

[29] 1684742, at *2-3 (Tex. App. June 21, 2006)
*Sun Oil Co. v. Burns*, 84 S.W.2d 442, 444 (Tex. Comm'n of App. 1935); *Garcia v. Garcia*, 2006 WL
1684742, at *3 (Tex. App. June 21, 2006)
[30] *Sun Oil Co. v. Burns*, 84 S.W.2d 442, 446-47 (Tex. Comm'n of App. 1935); *see Cornerstone I*, 435 B.R. at
404
[31] *Holloway's Unknown Heirs v. Whatley*, 131 S.W.2d 89, 91 (Tex. App. 1939)

> **of any payments out of production or by the removal of any charges or
> Permitted Liens to which any of such Oil and Gas Properties or other
> rights, titles, interests or estates are subject or otherwise . . .[32]**

At trial, the Committee argued that subsection (e) only acts when "there is a defect or a problem"

with a lien granted under subsection (a).[33]

The Court is not convinced that subsection (e) is a curative provision.  Initially, as

discussed above, it is consistent with the Texas rules of construction to construe this provision as

a blanket grant.  Further, the language, on its face, does not appear to be curative as it does not

address defects, errors, or omissions.  Rather, as pointed out by the Committee, the bolded

language in subsection (e) appears to grant the Second Lien Parties "enlarged" rights, for

example, when a Permitted Lien (which might be Excluded Collateral) is removed from the

subject Oil and Gas Properties.[34]  In any event, the bolded language does not detract from the

blanket grant.

Further, the Court's interpretation is consistent with the intent of the parties as expressed

in the Mortgages.  First, the only specific reference to the intent of the parties is found in the

defined term Hydrocarbon Interests.[35]  The definition of Hydrocarbon Interests includes not only

oil and gas leases and oil, gas, and mineral leases, but also fee interests, surface interests, and

---

[32] Mortgages, Section 2.01(e)
[33] Trial Tr. Dec. 14, 2015 at 34:24-25
[34] Trial Tr. Dec. 14, 2015 at 35:4-7
[35] Mortgages, Section 1.03.
> 'Hydrocarbon Interests' mean:  'all rights, titles, interests and estates and the lands and
> premises covered or affected thereby now or hereafter acquired by the Mortgagor in and to oil
> and gas leases, oil, gas and mineral leases, or other liquid or gaseous hydrocarbon leases, fee
> interests, surface interests, mineral fee interests, overriding royalty and royalty interests, net
> profit interests and production payment interests, including any reserved or residual interests
> of whatever nature, in each case, which are described on Exhibit A; provided that, it is the
> intent of the Mortgagor that all interests of such nature be subject to the Lien of this Mortgage
> even if (i) its interests on Exhibit A shall be incorrectly described or a description of a part or
> all of such property or the Mortgagor's interests therein be omitted [sic] limited to particular
> lands, specified depths or particular types of property interests or (ii) such properties or
> interests may be hereafter acquired.'

mineral fee interests which are described on Exhibit A.  The definition also specifically states, however, that "it is the intent of the Mortgagor that all interests of such nature be subject to the Lien on this Mortgage" even if its interests on Exhibit A are: (x) "incorrectly described or a description of a part or all of such property or the Mortgagor's interests therein be omitted;" or (y) "limited to particular lands, specified depths or particular types of property interests."  These words are a clear expression of intent to convey all surface interests whether or not described on Exhibit A.[36]

Second, the introductory clause to the Mortgages provides that the Mortgages are for the benefit of the Mortgages Trustee with respect to all "Mortgaged Property."  Mortgaged Property means "the Oil and Gas Properties described in clauses (a) through (e) of Section 2.01."  And, the definition of "Oil and Gas Properties" includes an expansive list of property rights related to the extraction of oil and gas, including:

> (g) all properties, rights, titles, interests and estates described or referred to above, including any and all property, real or personal, now owned or hereinafter acquired and, situated upon, used, held for use or useful in connection with the operating, working or development. of any of such Hydrocarbon Interests or property . . and (x) including any and all oil wells, gas wells, injection wells or other wells, fuel separators, liquid extraction plants, plant compressors, pumps, pumping units, field gathering systems, tanks and tank batteries, fixtures, valves, fittings, machinery and parts, engines, boilers, meters, apparatus, equipment, appliances, tools, implements, cables, wires, towers, casing, tubing and rods, surface leases, rights-of-way, easements and servitudes, together with all additions, substitutions, replacements, accessions and attachments to any and all of the foregoing.[37]

Both of these defined terms, which are expansive in breadth and not limited to the interests defined on Exhibit A to each of the Mortgages, further demonstrate Quicksilver's intent to

---

[36] The Second Lien Parties argue that this language, though oddly placed, is in the nature of a curative provision.  *See supra* note 27.

[37] Mortgages, Section 1.03

convey a blanket lien on its real estate interests, and in particular, the types of interests which make up the Disputed Real Property Interests.

The Court's interpretation, consistent with Texas law, gives unique meaning to subsection (e) and reflects the intent of the parties as expressed in the Mortgages; the Committee's reading does not. As a result, the Court is not persuaded by the Committee's argument.

### ii. Subsection (a) Does Not Grant a Lien on the Disputed Real Property Interests.[38]

Subsection (a) grants a lien on: "All rights, titles, interest and estates now owned or hereafter acquired by [Quicksilver] in and to the Oil and Gas Properties described on <u>Exhibit A</u>." (Emphasis in original.) As with subsection (e), a proper interpretation of subsection (a) requires the Court to attempt to give meaning to every one of the Mortgages' pertinent terms. The Court interprets the phrase "the Oil and Gas Properties *described on* <u>Exhibit A</u>" (emphasis added) to mean that subsection (a) grants a lien on real property interests that are both included in the definition of Oil and Gas Properties and included on Exhibit A. That is, the definition of "Oil and Gas Properties" identifies the universe of rights that may be listed in an Exhibit A, but Exhibit A, itself, determines the subset of Oil and Gas Properties actually conveyed in subsection (a). As the Disputed Real Property Interests are not listed on an Exhibit A, subsection (a) does not grant a lien on those interests.

The Second Lien Parties argue that subsection (a) grants a lien on all the property interests that are listed on Exhibit A as well as all the surface interests that are "used" for the properties listed on Exhibit A.[39] The Second Lien Parties reach this conclusion by reading the phrase "the Oil and Gas Properties described on <u>Exhibit A</u>" to mean "the Oil and Gas Properties

---

[38] Although the Court has determined that subsection (e) grants a blanket lien on the Disputed Real Property Interests, in the event that this matter is reviewed on appeal, the Court is expressing its views on the Second Lien Parties' alternative argument.

[39] Trial Tr. Dec. 14, 2015 at 57

*appurtenant to* Exhibit A." Under this interpretation, subsection (a) grants a lien on "any of the elements of the defined term 'Oil and Gas Properties' that are appurtenant to the specific oil and gas leases set forth on Exhibit A to the applicable Mortgage."[40] The Second Lien Parties further argue that the use in subsection (a) of the term Oil and Gas Properties, which has an extraordinarily expansive meaning, together with the "curative provision" in the definition of Hydrocarbon Interests compels the conclusion that the parties intended to convey all rights appurtenant to the oil and gas leases described on Exhibit A. As a result, the Second Lien Parties conclude that subsection (a) grants a lien on the Disputed Real Property Interests despite the fact that these interests are not identified on Exhibit A.

The Committee argues that the plain meaning of subsection (a) can only be interpreted as limiting the grant of liens to properties described on Exhibit A.[41] The Disputed Real Property Interests are not listed on any Exhibit A. As a result, the Committee argues that the Mortgages do not grant the Second Lien Parties a lien on the Disputed Real Property Interests.

The Court agrees with the Committee. The Second Lien Parties' interpretation requires a strained reading of the phrase "described on" in subsection (a). The relevant portion of subsection (a) grants a lien on "the Oil and Gas Leases *described on* Exhibit A." (Emphasis added.) Black's Law Dictionary defines "description" as a limiting term that means "[a]n enumeration or specific identification of something."[42] Applying that definition leads to the conclusion that subsection (a) grants liens on the specific "Oil and Gas Properties" that are listed on an Exhibit A. Had the parties intended the result urged by the Second Lien Parties, subsection (a) could have simply read: "All rights, titles, interest and estates now owned or hereafter acquired by the Mortgagor in and to the Oil and Gas Properties."

---

[40] Second Lien Brief ¶ 19
[41] Committee Brief ¶ 26
[42] BLACK'S LAW DICTIONARY (10th ed. 2014)

Moreover, the Second Lien Parties' position that the use of the term "Oil and Gas

Properties" together with the intent language in the definition of Hydrocarbon Interests means

that subsection (a) conveys a lien on all interests appurtenant to interests described on Exhibit A

creates a fundamental inconsistency, or in the terms used by the Texas courts, a repugnancy.  If

the intent language in the term Hydrocarbon Interests is read into the specific grant in subsection

(a), then subsection (a) would, in effect, grant a lien "on the interests that are listed on Exhibit A,

including the interests that are not listed on Exhibit A."  Because such an interpretation creates a

"necessary contradiction of the grant," it violates Texas rules of construction.[43]

Additionally, the interpretation advanced by the Second Lien Parties would render large

parts of subsections (b) through (e) superfluous.  Subsection (g) of the definition of Oil and Gas

Properties is broad enough to include many of the specific grants in subsections (a) through (e).

As the Court must attempt to give meaning to each subsection in Section 2.01, the Court cannot

conclude that subsection (a) provides a grant on interests appurtenant to Exhibit A.

The interpretation applied by the Court is consistent with Texas rules of construction.

The Court's interpretation gives meaning to every word in subsection (a), gives an ordinary

meaning to the words in subsection (a) because it applies "described" as a limiting term, and

reduces redundancy by ensuring that each subsection in Section 2.01 provides a unique grant.  As

a result, the Court is not persuaded to adopt the Second Lien Parties' interpretation.

**B.     Whether the Subsection (e) General Grant of Liens Violates the Statute of Frauds?**

The Committee alternatively argues that the Mortgages' description of the Disputed Real

Property Interests is insufficient to satisfy the Texas statute of frauds.[44]  The Committee argues

---

[43] *Assoc'd Oil Co. v. Hart*, 277 S.W. 1043, 1044 (Tex. 1925); *see Sun Oil Co. v. Burns*, 84 S.W.2d 442, 446-47
(Tex. Comm'n of App. 1935); *Cornerstone I*, 435 B.R. at 404
[44] Committee Brief ¶¶ 29-34; *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006); Tex. Bus. & Com.
Code § 26.01

that the Mortgages do not sufficiently describe the grant of Disputed Real Property Interests not listed on any Exhibit A. The Second Lien Parties do not dispute that the statute of frauds is applicable, but assert that it has been satisfied.

Texas case law requires courts to "apply a strict application of the statute of frauds, [but] allow for a liberal construction of the words describing the land."[45] To satisfy the Texas statute of frauds, a conveyance of real property must contain a "sufficient description" of the property to be conveyed.[46] "A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty."[47] As particularly relevant here, Texas courts have consistently found that a blanket grant of real property interests may satisfy the description standard where a grantor conveys all of the land that it owns in a geographic area so long as the boundaries of the geographic area are identified with reasonably certainty, such as an entire state or county.[48]

While subsection (e), itself, does not contain a geographic limitation, the entire grant of interests conveyed are limited by Section 2.01 to properties, rights and interests located in (or [that] cover or relate to properties located in) the State of Texas or the Outer Continental Shelf or such other offshore area adjacent to the State of Texas. This geographic description, separated by

---

[45] *Ardmore, Inc. v. Rex Group, Inc.*, 377 S.W.3d 45, 56 (Tex. App. 2012)

[46] *Hahn v. Love*, 394 S.W.3d 14, 25 (Tex. App. 2012) (citing *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008))

[47] *Hahn v. Love*, 394 S.W.3d 14, 25 (Tex. App. 2012) (citing *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008)); *see also Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006)

[48] *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *Hahn v. Love*, 394 S.W.3d 14, 25 (Tex. App. 2012); *Texas Consol. Oils v. Bartels*, 270 S.W.2d 708, 711 (Tex. App. 1954) (finding that all the oil and gas interests "located anywhere within the United States, any of which are located within the states of New Mexico, Kansas, Oklahoma, Louisiana and Texas" is a sufficient description); *see Cornerstone I*, 435 B.R. at 400 (property interests described as "located on or under or which concern any Property or Properties located in counties referenced in Exhibit A . . ." satisfied the Texas statute of frauds), *confirmed in Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal. (In re Cornerstone E & P Co., L.P.)*, 436 B.R. 830, 843 (Bankr. N.D. Tex. 2010)

the words "or" produces three separate geographical descriptions: (i) the State of Texas; (ii) the

Outer Continental Shelf and (iii) such other offshore area adjacent to the State of Texas.[49]  Under

the applicable law, this first description, the State of Texas, is sufficient to satisfy the statute of

frauds as to those real estate interests within Texas.[50]

**C.     Whether the Second Lien Parties' Liens on the Disputed Real Property Interests are Perfected?**

Under Texas law, "[a] conveyance of real property or an interest in real property or a

mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable

consideration without notice unless the instrument has been acknowledged, sworn to, or proved

and filed for record as required by law."[51]  Recording a mortgage in the proper county provides

"notice to all persons of the existence of the instrument."[52]  As a result, a subsequent purchaser

for value has constructive notice of "every recital, reference, and reservation contained in or

fairly disclosed by any instrument which forms an essential link in the chain of title under which

he claims."[53]  Real property interests transferred through a general grant will be in the chain of

title if the document making the general grant used language sufficient to satisfy the statute of

frauds and the document was properly recorded.[54]

The Mortgages provide for a general grant of all Quicksilver's real property interests in

the state of Texas.  As discussed above, this general grant satisfies the statute of frauds.  Further,

the Mortgages were properly filed in Denton County, Hill County, Hood County, Johnson

County, Parker County, Somervell County, and Tarrant County, Texas.  As a result, the Second

---

[49] *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908-09 (Tex. 1982)
[50] The Court makes no ruling regarding whether the second and third descriptions satisfy the statute of frauds.
[51] Tex. Prop. Code § 13.001(a)
[52] Tex. Prop. Code § 13.002(1)
[53] *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982)
[54] *Texas Consol. Oils v. Bartels*, 270 S.W.2d 708, 712 (Tex. App. 1954); *Cornerstone I*, 435 B.R. 390, 407 (Bankr. N.D. Tex. 2010)

Lien Parties hold perfected liens on all of Quicksilver's real property interests located in those counties. The parties did not stipulate that each of the Disputed Real Property Interests are located in those seven counties. [55] As such, this remains an open issue for the Court, but one which the parties should be able to agree on.

**Conclusion**

For the reasons provided, the Court finds that the Second Lien Creditors hold a perfected lien on the Disputed Real Property Interests located in Denton County, Hill County, Hood County, Johnson County, Parker County, Somervell County, and Tarrant County, Texas. The parties should submit an appropriate form of order.

Dated: January 8, 2016

HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[55] "The Parties reserve all rights with regard to any factual issues, if any, with respect to the Disputed Real Property Interests required for a determination of whether any of the Disputed Real Property Interests are subject to the Second Lien Parties' legal, valid, binding, perfected, enforceable, second priority liens and security interests, and to the extent necessary, the Parties agree to resolve and such factual issues at a subsequent time to be agreed upon by the Parties or a date to be set by the Court." Adv. Pro. No. 15-51896, D.I. 27-1 at 8.